1
2
3
4
5
6
7
8                           **UNITED STATES DISTRICT COURT**
9                           **SOUTHERN DISTRICT OF CALIFORNIA**
10

11    JAVIER TENORIO PLATA, an individual;              CASE NO.  09cv44-IEG(CAB)
      DOLORES GALVEZ MONTES, an individual;
12    ALFONSO VICTOR INCLAN COSTA, an                   **ORDER:**
      individual; GERMAN VASQUEZ FIGUEROA, an
13    individual; MICHELL ARIANNE CURTO                 **(1) DENYING PLAINTIFFS'**
      GONGORA, an individual; CARLOS ACEVEDO            **MOTION FOR RIGHT TO**
14    MENDOZA, an individual; LUIS DELGADO               **ATTACH ORDER (Doc. No. 18);**
      PICASSO, an individual; RUBEN ARMAND
15    ROBLES DIAZ, an individual; GRACIELA              **(2) GRANTING PLAINTIFFS'**
      HERRERA RODRIGUEZ, an individual; MARIA           **MOTION TO DISMISS THE**
16    DE LOS ANGELES SANDOVAL, an individual;           **COUNTERCLAIM (Doc. No. 20);**
      REINALDO RODRIGUEZ VELASQUEZ, an
17    individual; BRAULIO ALBERTO DELGADO               **(3) DENYING DEFENDANT'S**
      BRASIA, an individual; FRANCISCA                  **MOTION FOR COSTS BOND (Doc.**
18    GASTELUM ARAGON, an individual; MARIA             **No. 22.); and**
      DE LA VILLANET SANCHEZ GUZMAN, an
19    individual; YADIRA CAMBREROS PINEDA, an           **(4)   DENYING DEFENDANT'S**
      individual; DANIEL OROZCO VALDEZ, an              **MOTION TO STAY (Doc. No. 23).**
20    individual; REBECCA GUTIERREZ JUAREZ, an
      individual; and MARTH HUIZAR N., an
21    individual,

22                                     Plaintiffs,
            vs.
23

24    DARBUN ENTERPRISES, INC., a California
      corporation; OEM SOLUTIONS, LLC, a
25    California limited liability company; and DOES 1
      through 10 inclusive,
26
                                     Defendants.
27

28    AND RELATED COUNTERCLAIM.

                                      - 1 -                                      09cv44

**BACKGROUND**

I.      Factual Background

This is an action by Plaintiffs for enforcement of a foreign judgment pursuant to the Uniform Foreign-Country Money Judgments Recognition Act, Cal. Code Civ. Proc. § 1713 *et seq.* According to the Amended Complaint ("Complaint"), Plaintiffs are all Mexican citizens who are residents of Tijuana, Baja California, Mexico, and were employed by Soluciones Tecnologicas de Mexico, S.A. de C.V.  ("STM") (Complaint ¶¶ 2-21, 24.)  Plaintiffs allege Defendants Darbun Enterprises, Inc. ("Darbun" or "Defendant") and OEM Solutions, LLC,[1] both of which are California companies, were part of a production unit responsible for the payment of wages to the employees of Soluciones Tecnologicas de Mexico, S.A. de C.V.  (Complaint ¶ 25.)

Plaintiffs were not paid their wages due by STM.  As a result, on May 31, 2000, Plaintiffs commenced an action against STM, as well as OEM Solutions, LLC and Darbun, before the Number One Special Local [Labor Relations] and Conciliation and Arbitrage Local Authority of the City of Tijuana (the "Labor Board").  [Complaint ¶ 2 and Ex. 5 (the "Judgment").]  The Mexican Consulate General in San Diego, California, gave notice of such action to Darbun at the corporate address listed with the California Secretary of State.  (Complaint ¶ 27.)

On May 3, 2001, Darbun Enterprises, Inc. granted Hector Cervantes Sanchez, Esq. and Jose Guadalupe San Miguel Torero, Esq., a General Power of Attorney to act on its behalf with regard to the Plaintiffs' litigation before the Labor Relations Board.  (Complaint ¶ 28 and Ex. 1.) Darbun voluntarily appeared before the Labor Board through its attorneys on May 7, 2001. (Darbun's Motion to Dismiss the Complaint, Doc. No. 6, p. 3, line 9.)  As reflected in the Labor Board's Judgment, however, the Labor Board considered Darbun to be in default because of its failure to appear at the first hearing on February 23, 2001. As a result, the Labor Board deemed all claims against Darbun were admitted.  (Judgment, Ex. 5 to the Complaint, pp. 8, 9, 28.)

On September 5, 2003 the Labor Board handed down its initial judgment in Darbun's favor, finding there was no economic unit between STM and Darbun. [September 5, 2003 Labor Board Decision, Ex. 16 to Sherman Decl. ISO Opp. to Motion for Right to Attach Order

---

[1] Defendant OEM Solutions, LLC has not yet entered an appearance in this case.

("Sherman Decl."), Doc. No. 34-11.]  On October 15, 2003, Plaintiffs filed an "amparo" (appeal) of that decision with the Third Collegiate Court of the Fifteenth Circuit ("Federal Court").[2]  (Exs. 19-20 to Sherman Decl.)  On June 1, 2004 the Federal Court ordered that Labor Board to issue a new decision.  (Exs. 21-22 to Sherman Decl.)  A new judgment finding Darbun and OEM liable as members of an economic production unit that employed Plaintiffs issued on August 13, 2004. (Ex. 5 to Complaint.)   Defendant filed an amparo to the Federal Court on September 9, 2004, but it was denied as untimely.  (Opp. to Motion for Right to Attach Order, Doc. No. 34, p. 5, and Exs. 25-28 to Sherman Decl.)

On  April 29, 2005, the Labor Board entered the judgment in favor of Plaintiffs and against Darbun and OEM.  On July 1, 2008, the Labor Board updated the amount of the Judgment to include daily wages due under Mexican Law from April 29, 2005 through July 1, 2008. (Complaint ¶ 40 and Ex. 7.)  As of July 1, 2008, the Judgment totaled 40,827,990.57 Mexican pesos.  (Complaint ¶ 43.)  The Judgment continues to grow at the rate of 16,996.12 Mexican pesos per day, representing per diem wages for each of the Plaintiffs until the Judgment is paid in full. (Complaint ¶ 44.)  As of January 8, 2009, the Mexican Judgment totaled $3,250.714.00 in U.S. dollars.  (Complaint ¶ 46.)

The updated Judgment of July 1, 2008 refers to writs Plaintiffs brought before the Labor Board on November 11, 2005, October 31, 2007.  The filing of these writs apparently "interrupted" the statute of limitations for enforcement of the Judgment.  On March 19, 2009 Darbun's Mexican attorneys filed a motion with the Labor Board challenging Plaintiffs' right to enforce the Judgment.  Darbun premised this motion on its contention that the recalculation requests stamped November 11, 2005 and October 31, 2007 were actually created at a later date and back-dated in the Labor Board file.  This act of fraud, according to Darbun, voided the interruption of the statute of limitations, rendering the Judgment expired.  The Labor Board held a hearing on the motion on June 24, 2009.  On August 21, 2009, the Labor Board denied Darbun's

---

[2]  The designated exhibits to Mr. Sherman's declaration do not clearly state the name of the Mexican court to which Plaintiffs appealed the September 5, 2003 decision.  The Court nevertheless accepts Defendant's contention regarding the name of the Mexican Federal Court, as Plaintiffs have not disputed the court's name, or dispute that Darbun filed the appeal it describes.

1  motion.[3]  On September 16, 2009, Darbun lodged a Spanish-language document with this Court,

2  purportedly indicating that it has appealed the Labor Board's denial of its motion.  (Doc. No. 78.)

3  II.  Procedural Background

4       Plaintiffs filed their complaint on January 12, 2009.  (Doc. No. 1.)  On April 22, 2009

5  Defendant filed an answer and counterclaim to "void[ the] foreign judgment" and for fraud.  (Doc.

6  No. 16.)  Plaintiffs filed the instant motion for  right to attach order on April 30, 2009.  (Doc. No.

7  18.)  Defendant filed an opposition (Doc No. 34), and Plaintiff filed a reply. (Doc. No. 46.)

8  Defendant also filed a sur-reply (Doc. No. 69) after seeking leave of the Court.  On May 18, 2009

9  Plaintiffs filed a motion to dismiss the counterclaim.  (Doc. No. 20.)  Defendant filed an

10  opposition, and then filed a first amended counterclaim on June 1, 2009. (Doc. No. 32.)  On May

11  19, 2009 Defendant filed a motion for an order requiring Plaintiffs to furnish security for payment

12  of costs ("motion for costs bond", Doc. No. 22,) and a motion to stay the case.  (Doc. No. 23.)  The

13  parties filed opposition and reply briefs to both motions.

14       Pursuant to a jurisdictional argument Defendant raised in its opposition to Plaintiffs'

15  motion for a right to attach order, the Court ordered Plaintiffs to show cause why the case should

16  not be dismissed for lack of subject matter jurisdiction on June 10, 2009.  (Doc. No. 51)  Plaintiffs

17  filed a response to the order to show cause on June 12, 2009, and the Court granted Plaintiffs leave

18  to amend the complaint to cure the deficient jurisdictional allegations on June 29, 2009.  (Doc. No.

19  58.)  Plaintiffs filed an amended complaint on July 8, 2009 and re-filed the document on July 9,

20  2009.[4]  The Court finds Plaintiffs' motion to dismiss the counterclaim suitable for disposition

21  without oral argument pursuant to Local Civil Rule 7.1(d)(1), and previously vacated the August

22  24, 2009 hearing.  The Court heard oral argument on Plaintiffs' motion for right to attach order

23  _____

24       [3]  On August 21, 2009, Plaintiffs lodged the Labor Board's denial of Darbun's motion,
     along with an unofficial translation of the decision.  (Doc. No. 76.)

25

26       [4]  Plaintiffs re-filed their amended complaint on July 9, 2009 (Doc. No. 61) in response to
     the Court's request that the caption of the amended complaint reflect that it was Plaintiffs' "First
27  Amended Complaint."  The re-filed amended complaint still failed to indicate it was Plaintiffs'
     first amended complaint.  As such, Plaintiffs filed an "Amended Document to Correct Caption" on
28  July 20, 2009 indicating the re-filed amended complaint's caption should read "First Amended
     Complaint."  (Doc. No. 73.)  The Court therefore construes the re-filed amended complaint (Doc.
     No. 61) as the operative "First Amended Complaint" in this case.

1  and Defendants' motions for costs bond and to stay the case on Monday, August 24, 2009.

2  **DISCUSSION**

3  I.       Plaintiffs' Motion for Right to Attach Order

4         Plaintiffs seek a right to attach order and issuance of a writ of attachment to secure

5  recovery on their Mexican judgment pending the outcome of this lawsuit.  Plaintiffs seek to attach

6  all of Darbun's corporate property which is subject to attachment pursuant to Cal. Civ. Proc. Code

7  § 487.010(a).[5]  The attachment would secure $43,938,280.53 Mexican pesos, equivalent to $3,250,

8  714 based on the January 8, 2009 exchange rate.

9         A.       Legal Standard

10        Under Fed. R. Civ. P. 64, state law provides all remedies when property is to be seized for

11  the purpose of securing satisfaction of a judgment, unless a federal statute governs.  Plaintiffs

12  accordingly seek a writ of attachment under California's Attachment Law, Cal. Code Civ. P. §

13  482.010 et seq. (the "Attachment Law.")  The Attachment Law's statutes are subject to strict

14  construction.  Epstein v. Abrams, 57 Cal. App. 4th 1159, 1168 (Cal. Ct. App. 1997).

15        In seeking a writ of attachment, Plaintiffs have the burden of proving:

16        (1) The claim upon which the attachment is based is one upon which an attachment
           may be issued.
17
18         (2) The plaintiff has established the probable validity of the claim upon which the
           attachment is based.

19         (3) The attachment is not sought for a purpose other than the recovery on the claim
           upon which the attachment is based.
20
21         (4) The amount to be secured by the attachment is greater than zero.

22  Cal. Civ. Proc. Code § 484.090 (2009); Loeb & Loeb v. Beverly Glen Music, 166 Cal. App. 3d

23  1110, 1116 (Cal. Ct. App. 1985).[6]

_____

24        [5]  "The following property of the defendant is subject to attachment: (a) Where the
    defendant is a corporation, all corporate property for which a method of levy is provided by
25  Article 2 (commencing with Section 488.300) of Chapter 8."  Cal Code Civ Proc § 487.010
    (2009).
26
27        [6]  Plaintiffs have asserted, and Defendant does not dispute, that: (a) they do not seek
    attachment for a purpose other than the recovery on the claim upon which the attachment is based;
    and (b) the amount to be secured by the attachment is greater than zero. (Memo ISO Motion for
28  Right to Attach Order at 1-2.)  The Court finds Plaintiffs have satisfied the third and fourth
    elements of their burden, and focuses the remainder of its inquiry upon whether Plaintiffs have

1   "The application [for a right to attach order] shall be supported by an affidavit showing that

2   the plaintiff on the facts presented would be entitled to a judgment on the claim upon which the

3   attachment is based." Cal. Civ. Proc. Code § 484.030 (2009).   A defendant opposing a right to

4   attach order must give notice of his objection "accompanied by an affidavit supporting any factual

5   issues raised and points and authorities supporting any legal issues raised." Cal. Civ. Proc. Code §

6   484.060 (2009).

7        A right to attach "order will be issued if the court finds that the plaintiff's claim is probably

8   valid and the other requirements for issuing the order are established. The hearing is not for the

9   purpose of determining whether the claim is actually valid. The determination of the actual

10  validity of the claim will be made in subsequent proceedings in the action and will not be affected

11  by the decisions at the hearing on the application for the order." Cal. Civ. Proc. Code § 484.050

12  (2009).

13        **B.**     Element 1: Whether Claim is One Upon Which Attachment May Be Issued

14              1.    Legal Standard

15        California Civil Procedure Code Section 483.010 provides that an attachment may issue

16  only if the claim sued upon is, unless otherwise provided by statute (1) a claim for money . . .

17  based upon a contract, express or implied; (2) of a "fixed or readily ascertainable amount not less

18  than five hundred dollars ($500);" (3) that is either unsecured or secured by personal property as

19  opposed to real property; and (4) "arises out of the conduct by the defendant of a trade, business,

20  or profession." These provisions are strictly construed against the applicant. Pos-A-Traction, Inc.

21  v. Kelly-Springfield Tire Co., 112 F. Supp. 2d 1178, 1181 (C.D. Cal. 2000).

22              2.    Analysis

23        The Court finds, based on Plaintiffs' motion and supporting documentation, that the

24  judgment is based upon a contract, because a money judgment is "contractual" or "quasi-

25  contractual" for collection purposes. See Minor v. Minor, 175 Cal. App. 2d 277, 279 (Cal. Ct.

26  App.1959) ("[A]n action based on a judgment is an action based on a contract."). The Court also

27  finds the underlying claim is for a readily ascertainable amount over $500. Although Plaintiffs'

28  _____

satisfied the first and second elements.

1   papers do not address whether the claim is unsecured or secured by personal property, Plaintiffs

2   clarified at oral argument to the Court's satisfaction that the claim is unsecured.  Defendant's

3   papers are silent as to whether Plaintiffs have satisfied the requirements of Section 483.010.  The

4   Court therefore finds Plaintiffs have met the threshold requirement for a right to attach order as set

5   forth in Section 483.010.

6        C.      Element 2: Probable Validity of the Claim

7                1.      Legal Standard

8           A claim has "probable validity" where "it is more likely than not that the plaintiff will

9   obtain a judgment against the defendant on the claim."  Cal. Civ. Proc. Code § 481.190 (2009).

10  This means that the plaintiff must at least establish a prima facie case.  If defendant opposes the

11  application, "the court must consider the relative merits of the positions of the respective parties

12  and make a determination of the probable outcome of the litigation."  Loeb & Loeb v. Beverly

13  Glen Music, 166 Cal. App. 3d 1110, 1120 (Cal. Ct. App. 1985).

14          In order to meet their burden, Plaintiffs must demonstrate they will more likely than not

15  prevail on their claim to enforce the Mexican Judgment under the Uniform Foreign-Country

16  Money Judgments Recognition Act, Cal. Code Civ. Proc. § 1713 et seq.  Defendant argues it has

17  asserted six categories of defenses that preclude the Court from finding that Plaintiff has made the

18  requisite showing: (1) the Mexican Judgment imposes a penalty which may not be enforced

19  pursuant to Cal. Civ. Proc. Code § 1715 (b)(2); (2) the Judgment is expired in Mexico; (3) the

20  Mexican proceedings did not provide adequate due process, as required by Cal. Civ. Proc. Code §

21  1716(b); (4) there is substantial doubt regarding the integrity of the Mexican court; (5) the

22  Judgment is repugnant to California public policy; and (6) the Judgment is invalid due to extrinsic

23  fraud or mistake.

24          Darbun's defense that the judgment is a penalty is dispositive, because, as discussed infra,

25  Plaintiffs fail to show they will more likely than not prevail against it.  See Pet Food Express Ltd.

26  v. Royal Canin United States Inc., 2009 U.S. Dist. LEXIS 65141, at *12 (N.D. Cal. July 27, 2009)

27  (denying an application for attachment order where applicant, inter alia, failed to make a showing

28

1    it more than likely would prevail against just one defense).  Accordingly, the Court does not reach

2    Plaintiffs' probable chance of success against the remainder of the defenses.

3                    2.      Analysis

4            Section 1715(a) of the California Code of Civil Procedure provides that a foreign-country

5    judgment may be enforced in California so long as such judgment both "(1) grants or denies

6    recovery of a sum of money" and "(2) Under the law of the foreign country where rendered, is

7    final, conclusive, and enforceable."  That section further provides that a foreign-country judgment

8    for a sum of money is not enforceable if it is "a fine or other penalty."  Cal. Civ. Proc. Code §

9    1715(b)(2).  In determining whether a foreign judgment constitutes a penalty within the meaning

10   of the Uniform Foreign-Country Money Judgments Recognition Act, California courts employ

11   principles from cases discussing the enforcement of sister state judgments, cases discussing the

12   enforcement of foreign judgments under principles of comity, and the Restatement of the Foreign

13   Relation Laws of the United States.  Java Oil Ltd. v. Sullivan, 168 Cal. App. 4th 1178, 1187 (Cal.

14   Ct. App. 2008).[7]

15           Plaintiffs argue they will more likely than not prevail against Darbun's defense because the

16   Judgment is not a penalty "as a matter of law."  In making this argument, Plaintiffs rely on Java

17   Oil for the proposition that "'the term 'penalty' has multiple definitions, only one of which applies

18   in this context of the enforcement of judgments.'"  (Reply ISO Motion for Right to Attach Order at

19   4, quoting Java Oil, 168 Cal. App. 4th at 1187.)  This citation references the Java Oil court's

20   lengthy quotation of the United States Supreme Court's holding in Huntington v. Attrill that, *inter*

21   *alia*:

22           The question whether a statute of one State, which in some aspects may be called
             penal, is a penal law in the international sense, so that it cannot be enforced in the
23           courts of another State, depends upon the question whether its purpose is to punish
             an offence against the public justice of the State, or to afford a private remedy to a
24           person injured by the wrongful act.

25   Huntington v. Attrill, 146 U.S. 657, 674 (1892).  Accordingly, Plaintiffs argue that to be a penalty,

26

27           [7]  The court in Java Oil Ltd. interpreted Cal. Code Civ. Proc. § 1713.1, which was repealed
     on January 1, 2008 and replaced by Cal. Code Civ. Proc. § 1715.  Just as § 1715(b)(2) excludes
28   from enforceability any judgment which is "a fine or other penalty", the prior section defined a
     "foreign judgment" as a judgment "other than a judgment for taxes, a fine or other penalty ...."

1   "a judgment must either award a penalty to the state, to a public officer on behalf of the state, or a

2   member of the public suing on behalf of the public."  Plaintiffs accordingly contend the Mexican

3   Judgment is not a penalty because it is: (1) a civil judgment; (2) in favor of Plaintiffs as opposed to

4   a payable directly to the state; (3) and "for wages under Mexican law, which continue to accrue

5   until the employee is validly terminated."  (Reply ISO Motion for Right to Attach Order at 4.)

6        Defendant argues that in California a foreign judgment may *also* be considered a penalty if

7   it is the "award of non-compensatory damages . . . under the common law of the states."  (Opp. to

8   Motion for Right to Attach Order at 11.)  In support, Defendant cites the Supreme Court of

9   California's decision in  Miller v. Municipal Court of Los Angeles, 22 Cal. 2d 818, 837 (Cal.

10  1943) (holding that despite "considerable disagreement in the decisions concerning what is a

11  penalty[,] [t]he test generally underlying most of the cases, however, is that a 'penalty' includes

12  any law compelling a defendant to pay a plaintiff other than what is necessary to compensate him

13  for a legal damage done him by the former.")  Defendant accordingly argues the Mexican

14  Judgment, which is calculated at the daily rate of 16,996.12 Mexican pesos for every day from

15  May 9, 2000 (the date the employment relationship was severed), is an unenforceable penalty in

16  California under the Uniform Foreign-Country Money Judgments Recognition Act because the

17  damages were not awarded to compensate Plaintiffs for payment of unpaid wages; they were

18  instead "awarded because of the finding that the employer was at fault for the termination of the

19  labor relationship."  (Opp. to Motion for Right to Attach Order at 11.)

20       Although the inquiry the Court must undertake in this case is similar to that set forth in

21  Java Oil, that inquiry does not necessarily lead to Plaintiffs' asserted conclusion.  In Java Oil, after

22  citing the aforementioned passage in Huntington v. Attrill, the court explained that California

23  courts have followed the Huntington test, as exemplified by the following formulation:

24           The question is not whether the statute is penal in some sense. The question is
             whether it is penal within the rules of private international law. A statute penal in
25           that sense is one that awards a penalty to the state, or to a public officer in its
             behalf, or to a member of the public, suing in the interest of the whole community
26           to redress a public wrong. . . . The purpose must be, not reparation to one
             aggrieved, but vindication of the public justice . . . .
27
    Java Oil, 168 Cal. App. 4th at 1187 (citing Chavarria v. Superior Court, 40 Cal. App. 3d 1073,
28
    1077 (Cal. Ct. App. 1974)).  Interestingly, the Java Oil court then cited Miller, the case upon

- 9 -

1   which Darbun relies, for the proposition that California courts, in applying the <u>Huntington</u>

2   standard, have found "treble damages, double damages, and minimum fines were considered

3   penalties." <u>Id.</u> at 1187-88 (citing <u>Miller</u>, 22 Cal. 2d at 837.)

4        The Court in <u>Java Oil</u> also quoted from the Restatement (Third) Foreign Relations Law of

5   the United States, as follows:

> A penal judgment for purposes of this section, is a judgment in favor of a foreign
> state or one of its subdivisions, and primarily punitive rather than compensatory in
> character. A judgment for a fine or penalty is within this section; a judgment in
> favor of a foreign state arising out of a contract, a tort, a loan guaranty, or similar
> civil controversy is not penal for purposes of this section . . . . [¶] Some states
> consider judgments penal for purposes of non-recognition if multiple, punitive, or
> exemplary damages are awarded, even when no governmental agency is a party . . .
> . In the United States, such judgments are not considered penal for this purpose.

10
11   <u>Id.</u> at 1189 (quoting Restatement (3d) Foreign Relations Law of the United States, § 483, com. b,

12   pp. 611-12).

13        Ultimately, in reliance upon the formulations of "penalty" described *supra*, the <u>Java Oil</u>

14   court balanced a number of factors in determining that an attorney's fees provision was not an

15   unenforceable penalty under the Uniform Foreign-Country Money Judgments Recognition Act,

16   including: (1) that the fee award compensated the respondent for fees incurred in a lawsuit as

17   opposed to punishing the petitioner for an offense against the public; (2) that the award was

18   payable to the respondents and not the state or the court; (3) that the judgment arose from a civil

19   action and not the penal laws of the country issuing the judgment; (4) that the damages were not

20   designed to provide an example or punish the petitioner; and (5) no mandatory fine, sanction or

21   multiplier was imposed on the petitioner. <u>Id.</u> at 1189. The Court finds this analysis persuasive, as

22   it clearly synthesizes and applies the relevant legal tests.

23        Here, the Mexican Judgment indicates STM's Administrator notified Plaintiffs that starting

24   on April 28, 2000, their salaries would no longer be paid. As a result, Plaintiffs allegedly

25   rescinded their employment on May 9, 2000 "for causes attributable to [their employers]." (Ex. 5

26   to Complaint.) After considering the evidence, the Labor Board concluded "that the plaintiffs did

27   prove their case so their rescission of their work relationship is legal and it is imputable to the

28   employer . . . ." ("Conclusion" to Judgment, Ex. 5 to Complaint.) Accordingly, the Labor Board

     found the defendants, including Darbun, were "condemned to pay" a litany of damages. Some of

these damages were awarded pursuant to the "work contract[s]" of certain plaintiffs, but many other types of damages, such as defendants' obligation to pay Plaintiffs "the amount resulting from 20 days salary for each year they worked, three month (sic) salary, plus vacation payment for the years 1998, 1999, and the proportion for the year 2000[,]" were awarded without citation to any legal authority.  Moreover, the Labor Board's decree that the defendants must pay "all unpaid salaries starting on May 9, 2000 until the day they are paid" does not specify the legal authority supporting this outcome.

Given the lack of information regarding the nature of the Mexican Judgment, the Court cannot determine as a matter of law whether the damages constitute a penalty.  Crucially, it is unclear whether the Judgment served to punish Defendant or to compensate Plaintiffs for harm incurred.  The Judgment indicates that Plaintiffs were not paid wages between April 28, 2000 and May 9, 2000; that is, for twelve days at most.  The amount of the Labor Board damages, however, as indicated *supra*, far surpasses compensation for twelve days' wages.  As opposed to compensation for lost wages, the damages could very well have been for "rescission of their work relationship . . .  imputable to the employer."  ("Conclusion" to Judgment, Ex. 5 to Complaint.)  Under Mexican law, a court finding such an offense could "award a penalty to a member of the public, suing in the interest of the whole community to redress a public wrong."  Java Oil, 168 Cal. App. 4th at 1187.  The provision that Defendant must also pay all Plaintiffs' salaries, infinitely accruing at a daily rate, could also very well have been intended to punish Defendant as opposed to compensating Plaintiffs.  Although Plaintiffs argue the Judgment is compensatory because under Mexican law wages "continue to accrue until the employee is validly terminated," they do not cite to the corresponding Mexican law or point to any portion of the Judgment that supports this contention.  Plaintiffs also do not produce the original complaint or the work contracts referenced in the Judgment, which could potentially help guide the Court to the legal basis for the damages the Labor Board ultimately awarded.

In order to secure a right to attach order, Plaintiffs must demonstrate they will most likely prevail on the issue of whether the Judgment constitutes an unenforceable penalty.  Although this is a question of law, Plaintiffs have not produced sufficient information about the underlying

judgment for the Court to make this determination.  Accordingly, Plaintiffs have not established they will more likely than not prevail on the issue of whether the Judgment is a penalty and have failed to make the necessary showing to secure a right to attach order.  Plaintiffs' motion for a right to attach order is denied.

II.    Plaintiffs' Motion to Dismiss the Counterclaim

As mentioned *supra*, on April 22, 2009 Defendant filed an answer to the original complaint, as well as a counterclaim to void the foreign judgment and for fraud.  (Doc. No. 16.) On May 18, 2009 Plaintiffs filed a motion to dismiss the counterclaim.  (Doc. No. 20.)  Defendant filed an opposition to the motion, as well as a first amended counterclaim ("FACC"), on June 1, 2009. (Doc. No. 32.)  The amended counterclaim primarily augments the general factual allegations of the original counterclaim.  Plaintiffs filed a reply on June 8, 2009, urging the Court to dismiss the first amended counterclaim because it did not cure the defects in the original counterclaim and because Plaintiffs did not wish to re-file their motion to dismiss.  (Doc. No. 47.) The Court accordingly will consider the legal sufficiency of the FACC based on the arguments raised in Plaintiffs' motion to dismiss the original counterclaim.

A.    Legal Standards

1)    Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009).  A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint.  Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001).  A complaint survives a motion to dismiss under Fed. R. Civ. P. 12(b)(6)  if it contains "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S.544, 570 (2007).  The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party.  Knievel v. ESPN, 393 F.3d 1068, 1072 (9th Cir. 2005).  Notwithstanding this deference, the court need not accept "legal conclusions" as true.  Ashcroft v. Iqbal, --- U.S. ---, 129 S.Ct. 1937, 1949 (2009). Moreover, it is improper for a court to assume "the [plaintiff] can prove facts that [he or she] has

1  not alleged." <u>Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters</u>, 459 U.S.

2  519, 526 (1983).   Accordingly, a reviewing court may begin "by identifying pleadings that,

3  because they are no more than conclusions, are not entitled to the assumption of truth." <u>Iqbal</u>, 129

4  S. Ct. at 1950.

5       However, "[w]hen there are well-pleaded factual allegations, a court should assume their

6  veracity and then determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u>  A

7  claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw

8  the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> at 1949 (citing

9  <u>Twombly</u>, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,'

10  but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>  "Where a

11  complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the

12  line between possibility and plausibility of entitlement to relief.' " <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at

13  557).   The Court may deny leave to amend the complaint where a complaint previously has been

14  amended, or where amendment would be futile.  <u>Allen v. City of Beverly Hills</u>, 911 F.2d 367, 373

15  (9th Cir. 1990).

16              2)      Federal Rule of Civil Procedure 12(b)(1)

17       A court must address jurisdictional questions before proceeding to the merits of a case.

18  <u>Wilbur v. Locke</u>, 423 F.3d 1101, 1106 (9th Cir. 2005).  "A motion to dismiss for lack of subject

19  matter jurisdiction may either attack the allegations of the complaint or may be made as a

20  'speaking motion' attacking the existence of subject matter jurisdiction in fact." <u>Thornhill</u>

21  <u>Publishing Co. v. General Tel & Elect.</u>, 594 F.2d 730, 733 (9th Cir. 1979); <u>see also</u> Fed. R. Civ. P.

22  12(b)(1) (2009). "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance

23  of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on

24  affidavits or any other evidence properly before the court." <u>St. Clair v. City of Chico</u>, 880 F.2d

25  199, 201 (9th Cir. 1989).  Thus, the existence of disputed material facts will not preclude the trial

26  court from evaluating for itself the merits of jurisdictional claims.  <u>Id.</u>  Because the plaintiff bears

27  the burden of establishing subject matter jurisdiction, no presumption of truthfulness attaches to

28  the allegations of the plaintiff's complaint and the Court must presume it lacks jurisdiction until

1    the plaintiff establishes jurisdiction.  Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221,

2    1225 (9th Cir. 1989).

3        B.    Voiding the Foreign Judgment

4        Defendant's first counterclaim for relief in the FACC is "To Void the Foreign Judgment."

5    (FACC at 5-6.)  The counterclaim proceeds to list a litany of reasons why the "Judgment is void"

6    and requests that the Court declare that the Mexican Judgment is "null and void as to

7    Counterclaimant." Plaintiffs argue this claim fails, *inter alia*, because there is no recognized cause

8    of action to "void" a foreign judgment.  (Motion to Dismiss Counterclaim at 4.)

9        Defendant's opposition brief asserts that "[a] court's equitable power to set aside a

10   judgment applies to foreign as well as domestic judgments." (Opp. to Motion to Dismiss

11   Counterclaim at 3.)  In support of this contention, Darbun cites Pentz v. Kuppinger, 31 Cal. App.

12   3d 590 (Cal. Ct. App. 1973) and Hoffman v. Greene (In re Burke), 374 B.R. 781 (Bankr. D. Colo.

13   2007).  However, Pentz did not involve an independent cause of action to "void" a foreign

14   judgment or otherwise set it aside.  In Pentz, the plaintiff, who had already paid a judgment in

15   Mexico, sought *restitution* of that sum in a California court based on her contentions that the

16   Mexican judgment was procured by fraud.  The restitution claim was premised upon a theory of

17   equitable *relief* from a foreign judgment due to extrinsic fraud rather than an argument that the

18   Court should "set aside" the Mexican judgment or otherwise "void" it.  Pentz, 31 Cal. App. 3d at

19   594-595.

20       Hoffman similarly did not an involve an independent action to "void" or "set aside" a

21   foreign judgment.  In Hoffman's related civil proceeding, the plaintiff sought enforcement of a

22   Mexican judgment in a Colorado state court, and the defendant produced a verified answer raising

23   fraud, and procedural and jurisdictional defects in the Mexican proceedings as defenses to

24   enforcement of the claim.  Hoffman, 374 B.R. at 790.  The state Court never conducted a hearing

25   on the defenses due to the defendant's filing for bankruptcy.  Id. at 791.  In the later bankruptcy

26   proceeding, the bankruptcy court had been mandated by the district court to determine the

27   "propriety, legitimacy, legal sufficiency, and enforceability" of the Mexican judgment.  Id. at 796.

28   Although the mandate stated the bankruptcy court should determine whether the Mexican

1   judgment was "so riddled with fraud that it must be set aside" the context of the mandate was

2   whether the bankruptcy court should *recognize* the judgment.  The bankruptcy court ultimately

3   held the judgment "[could] not be recognized," but did not "void" it, or affirmatively set it aside.

4   Id. at 797.

5        A Rule 12(b)(6) dismissal is proper where a claim "lack[s] a cognizable legal theory."

6   Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984).  Here, Defendant's

7   allegations fail to present a cognizable legal theory or facts sufficient to support a cognizable legal

8   basis for the Court to affirmatively declare the Mexican Judgment void, as opposed to merely

9   declining to enforce or recognize it pursuant to Darbun's affirmative defense to Plaintiffs' claim

10  under the Uniform Foreign-Country Money Judgments Recognition Act.  The Court therefore

11  dismisses the first counterclaim without prejudice.

12       C.        Fraud

13       Defendant also brings a counterclaim for common law fraud against Plaintiffs.  The basis

14  for this claim is Plaintiffs' allegedly fraudulent backdating of their requests to the Labor Board for

15  recalculation of the Judgment.  (FACC ¶¶ 33-39.)  Plaintiffs have moved to dismiss the

16  counterclaim for lack of subject matter jurisdiction and for failure to state a claim.  They further

17  argue the fraud cause of action is barred by the *res judicata* doctrine and California's litigation

18  privilege.  Because Defendant's failure to state a claim is dispositive, the Court does not reach the

19  *res judicata* and litigation privilege issues.

20            1.        Subject Matter Jurisdiction

21       Plaintiffs argue the Court lacks subject matter jurisdiction over the fraud counterclaim

22  because allowing the claim would result in a request for the Court to overturn the Mexican

23  Judgment and to police corruption of the judicial branch of a foreign nation's courts.

24       Plaintiffs' arguments fail for several reasons.   First, the Court has supplemental

25  jurisdiction over the counterclaim.  The supplemental jurisdiction statute, 28 U.S.C. § 1367,

26  provides:[I]n any civil action in which the district courts have original jurisdiction, the district

27  courts shall have supplemental jurisdiction over all other claims that are so related to claims in the

28  action within such original jurisdiction that they form part of the same case or controversy under

1  Article III of the United States Constitution.  See 28 U.S.C. § 1367(a) (2009). Where a

2  counterclaim meets these requirements, a court may exercise supplemental jurisdiction over such

3  claim, even if no independent basis for jurisdiction exists.  See Jones v. Ford Motor Credit Co.,

4  358 F.3d 205, 213 (2d Cir. 2004) (holding "section 1367 has displaced, rather than codified,

5  whatever validity inhered in the earlier view that a permissive counterclaim requires independent

6  jurisdiction (in the sense of federal question or diversity jurisdiction).")  Here, the fraud

7  counterclaim and Plaintiffs' claim under the Uniform Foreign-Country Money Judgments

8  Recognition Act bear a sufficiently similar factual relationship to constitute the same "case" within

9  the meaning of Article III and, therefore, Section 1367; specifically, both originate from the

10  Mexican Judgment and the litigation related to that judgment.

11          Second, contrary to Plaintiffs' contentions, Darbun's second counterclaim seeks damages

12  based on common law fraud; it does not request that the Court "overturn" the Mexican judgment

13  or that the Court should somehow "police" Mexican courts.  Third, Plaintiffs only cite authority

14  regarding the *defense* of fraud as a basis for challenging a judgment from a foreign country.  In

15  Clarkson Co. v. Shaheen, the Second Circuit held that "[a] foreign judgment may not be

16  collaterally attacked 'upon the mere assertion of the party that the judgment was erroneous in law

17  or in fact,' much less upon a mere assertion of fraud."  544 F.2d 624, 631 (2d Cir. 1976) (citation

18  omitted).  The issue of whether the trial court had subject matter jurisdiction over a common law

19  fraud counterclaim was not before the Clarkson court.

20          Notwithstanding Darbun's complete failure to address the issue of subject matter

21  jurisdiction in its opposition brief, the Court finds it has subject matter jurisdiction over Darbun's

22  counterclaim for common law fraud.  Accordingly the Court denies Plaintiffs' motion to dismiss

23  the counterclaim for lack of subject matter jurisdiction.

24                          2.      Failure to State Claim

25          To state a cause of action for fraud, a plaintiff must allege: "(1) A promise made regarding

26  a material fact; (2) the absence of intent on the part of the defendant at the time the promise was

27  made to perform it; (3) intent on the part of the defendant to induce action by plaintiff; (4)

28  justifiable reliance on the promise by plaintiff; (5) nonperformance of the promise by the

defendant, and (6) injury and damage proximately resulting to the plaintiff." Bondi v. Jewels by Edwar, Ltd., 267 Cal. App. 2d 672, 677 (Cal. Ct. App. 1968). Here, Darbun alleges Plaintiffs made material misrepresentations "to public officials for the purpose of obtaining and enforcing a judgment[,]" (FACC ¶ 35), and not that Plaintiffs made any material misrepresentations to Darbun itself, with the intent of inducing Darbun to act. There is also no allegation that Darbun justifiably relied on Plaintiffs' misrepresentations. Accordingly, the Court dismisses Darbun's second counterclaim, without prejudice, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

### III.    Defendant's Motion for a Costs Bond

#### A.    Legal Standard

Defendant seeks an order requiring Plaintiffs to furnish security for payment of Defendant's costs of suit. Federal courts have inherent authority to require plaintiffs to post security for costs. In re Merrill Lynch Relocation Management, Inc., 812 F.2d 1116, 1121 (9th Cir. Or. 1987). In addition, the Southern District of California's Civil Local Rules provide: "A judge may, upon demand of any party, where authorized by law and for good cause shown, require any party to furnish security for costs which may be awarded against such party in an amount and on such terms as are appropriate." CivLR 65.1.2(a). A district court typically follows the forum state's practice, particularly when a party is a nonresident. In re Merrill Lynch, 812 F.2d at 1121. Defendant specifically invokes California Code of Civil Procedure § 1030, which provides:

> (a) When the plaintiff in an action or special proceeding resides out of the state, or is a foreign corporation, the defendant may at any time apply to the court by noticed motion for an order requiring the plaintiff to file an undertaking to secure an award of costs and attorney's fees which may be awarded in the action or special proceeding. For the purposes of this section, "attorney's fees" means reasonable attorney's fees a party may be authorized to recover by a statute apart from this section or by contract.
>
> (b) The motion shall be made on the grounds that the plaintiff resides out of the state or is a foreign corporation and that there is a reasonable possibility that the moving defendant will obtain judgment in the action or special proceeding. The motion shall be accompanied by an affidavit in support of the grounds for the motion and by a memorandum of points and authorities. The affidavit shall set forth the nature and amount of the costs and attorney's fees the defendant has incurred and expects to incur by the conclusion of the action or special proceeding.

Cal. Civ. Proc. Code § 1030 (a)-(b) (2009).

///

A

B.      Parties' Arguments

Defendant argues that in order to prevail on the motion they need only establish that Plaintiffs reside out of state and that Defendant has a reasonable possibility of prevailing in the action.  Defendant relies on the complaint to establish Plaintiffs reside out of state (in Mexico), and argues it has a reasonable possibility of prevailing based on the six types of defenses described *supra* in the discussion on Plaintiffs' motion for right to attach order.  Defendant's total estimate of recoverable costs is $136,419, according to defense counsel's declaration in support of the motion.  In particular, Darbun estimates it will incur: (1) $91,419 for translator services for documents and witnesses; (2) $40,000 for court reporter and translator fees associated with deposing all plaintiffs "and five to seven depositions in addition to Plaintiffs;" and (3) copy fees of $5,000. (Sherman Decl. ISO Motion for Costs Bond, ¶ 17)

C.      Analysis

In addition to following the forum state's practice, the Court should balance several factors in assessing the propriety of requiring a plaintiff to post security for costs, including :

> (i) the degree of probability/improbability of success on the merits, and the background and purpose of the suit (e.g. whether it is frivolous or vexatious);
>
> (ii) the reasonable extent of the security to be posted, if any, viewed from the defendant's perspective; (e.g. a defendant's legitimate need for prophylaxis of a bond); and
>
> (iii) the reasonable extent of the security to be posted, if any, viewed from the nondomiciliary plaintiff's perspective (e.g. plaintiff's ability to post surety for costs).

Simulnet E. Assocs. v. Ramada Hotel Operating Co., 37 F.3d 573, 576 (9th Cir. 1994)

Here, with respect to the California statutory requirements, Defendant has established the Plaintiffs reside outside of California, and, as discussed in Section I, *supra*, have a reasonable possibility of succeeding on their defense that the Judgment constitutes a penalty.

However, factoring the other considerations set forth in Simulnet, the equities weigh in favor of denying Defendant's motion.  First, the background of this suit is not frivolous or vexatious, because Plaintiffs are seeking to enforce a judgment they have already received in Mexico. See Yao v. Superior Court, 104 Cal. App. 4th 327, 333-334 (Cal. Ct. App. 2002) ("The purpose of section 1030 is to protect California residents who are sued by out-of-state plaintiffs

when there is no reasonable possibility the out-of-state plaintiff will prevail. The section protects California residents by requiring the out-of-state plaintiff to post security to ensure payment of costs and attorney fees (if recoverable) in the likely event the plaintiff's action is defeated.") Second, Plaintiffs also have a reasonable possibility of prevailing in this action; they already have a Mexican judgment and their complaint has survived a motion to dismiss.  Third, Defendant has not set forth any details regarding its legitimate need for the prophylaxis of a bond in its moving papers.  The Court particularly finds it is unclear that Defendant will need to depose all eighteen plaintiffs, in addition conducting to five to seven other depositions in order to defend this action. The Court accordingly denies Defendant's motion for a costs bond.

IV.     **Defendant's Motion to Stay the Case**

     A.     **Legal Standard**

California Code of Civil Procedure § 1720 provides:

> If a party establishes that an appeal from a foreign-country judgment is pending or will be taken in the foreign country, the court may stay any proceedings with regard to the foreign-country judgment until the appeal is concluded, the time for appeal expires, or the appellant has had sufficient time to prosecute the appeal and has failed to do so.

Cal. Civ. Proc. Code § 1720 (2009).

     B.     **Analysis**

As discussed supra, on March 19, 2009 Defendant's Mexican attorneys filed a motion with the Labor Board challenging Plaintiffs' right to enforce the Judgment based on the alleged fraudulent backdating of Plaintiffs' recalculation requests.  On May 19, 2009 Defendant moved to stay the instant case, because at that time Darbun's appeal was still pending in Mexico, and the decision on the motion would allegedly resolve important issues in the case.  (Notice of Motion at 2.)  Darbun argued a stay of the case pending the resolution of the issue in Mexico would promote judicial economy, save litigation costs to the parties, and "benefit" the parties by preventing the issue from being litigated simultaneously in two different forums.

On August 21, 2009, the Labor Board denied Darbun's motion.  Although Darbun has informed this Court it has appealed the decision, it has produced no argument regarding the timing of a ruling on the appeal, or the chances that the appeal will be granted.  Moreover, as this cycle of

1  denials and appeals could continue indefinitely, the Court presently sees no reason to stay the

2  instant proceedings.  Darbun's motion to stay the case is therefore DENIED.

3  **<u>CONCLUSION</u>**

4         For the reasons stated herein, the Court: (1) DENIES Plaintiffs' motion for a right to attach

5  order; (2) DENIES Plaintiffs' motion to dismiss the fraud counterclaim for lack of subject matter

6  jurisdiction; (3) GRANTS Plaintiffs' motion to dismiss both counterclaims for failure to state a

7  claim pursuant to Fed. R. Civ. P 12(b)(6); (4) DENIES Defendant's motion for a costs bond; and

8  (5) DENIES Defendant's motion to stay the case.

9         The Court's dismissal of Darbun's counterclaim is WITHOUT PREJUDICE.  Defendant

10  may file a second amended counterclaim curing the deficiencies[8] described herein no later than

11  **<u>October 19, 2009</u>**.

13  **IT IS SO ORDERED.**

15  **DATED:  September 23, 2009**

16  *Irma E. Gonzalez*

17  **IRMA E. GONZALEZ, Chief Judge**
    **United States District Court**

---

28         [8]  The Court doubts, however, that Darbun will successfully be able to cure these
deficiencies within the confines of Federal Rule of Civil Procedure 11(b).

- 20 -